UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------
NILKA M.E.,

                          Plaintiff,        <u>DECISION AND ORDER</u>
                                                   1:24-CV-07087-GRJ

      v.

COMMISSIONER OF SOCIAL SECURITY,

                          Defendant.
-------------------------------------------------------
GARY R. JONES, United States Magistrate Judge:

In July of 2021, Plaintiff Nilka M.E.[1] applied for Disability Insurance Benefits under the Social Security Act. The Commissioner of Social Security denied the application.  Plaintiff, represented by Ny Disability, LLC, Daniel Berger, Esq., of counsel, commenced this action seeking judicial review of the Commissioner's denial of benefits under 42 U.S.C. §§ 405 (g) and 1383 (c)(3).  The parties consented to the jurisdiction of a United States Magistrate Judge. (Docket No. 9).

This case was referred to the undersigned on August 18, 2025. Presently pending is Plaintiff's Motion for Judgment on the Pleadings pursuant to Rule 12 (c) of the Federal Rules of Civil Procedure. (Docket

---

[1] Plaintiff's name has been partially redacted in compliance with Federal Rule of Civil Procedure 5.2 (c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

No. 17). For the following reasons, Plaintiff's motion is due to be granted, and this case is remanded for further administrative proceedings.

## I.  BACKGROUND

### A.    Administrative Proceedings

Plaintiff applied for benefits on July 8, 2021, alleging disability beginning August 31, 2020. (T at 18, 73).[2]  Plaintiff's application was denied initially and on reconsideration.  She requested a hearing before an Administrative Law Judge ("ALJ").

A hearing was held on November 9, 2023, before ALJ Kimberly Shulz. (T at 34-57). Plaintiff appeared with an attorney and testified. (T at 40-52). The ALJ also received testimony from Yaakov Taitz, a vocational expert. (T at 52-55).

### B.    ALJ's Decision

On November 28, 2023, the ALJ issued a decision denying the application for benefits. (T at 15-33).  The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through March 31, 2023 (the date last insured) and did not engage in substantial gainful activity between August 31, 2020 (the alleged onset date) and the date last insured. (T at 20).

---

[2] Citations to "T" refer to the administrative record transcript at Docket No. 10.

The ALJ concluded that, as of the date last insured, Plaintiff's degenerative disc disease of the cervical and lumbar spine with radiculopathy, left shoulder osteoarthritis, left hip labrum tear, fibromyalgia, and diabetes mellitus type II were severe impairments as defined under the Act. (T at 20).

However, the ALJ found that, as of the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equals one of the listed impairments in 20 CFR Part 403, Subpart P, Appendix 1. (T at 23).

At step four of the sequential analysis the ALJ determined that, as of the date last insured, Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work, as defined in 20 CFR 404.1567 (a), with the following limitations: she can lift and carry 10 pounds occasionally and less than 10 pounds frequently, stand and/or walk for 2 hours, and sit for 6 hours in 8-hour workday, with normal breaks; occasionally climb ramps, stairs, ladders, ropes, and scaffolds; and occasionally stoop, kneel, crouch, crawl, and balance. (T at 24).

The ALJ concluded that, as of the date last insured, Plaintiff could perform her past relevant work as a bookkeeper. (T at 28).

As such, the ALJ found that Plaintiff had not been under a disability, as defined under the Social Security Act, and was not entitled to benefits for the period between August 31, 2020 (the alleged onset date) and March 31, 2023 (the date last insured). (T at 28).

On July 26, 2024, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. (T at 1-7).

### C.  Procedural History

Plaintiff commenced this action, by and through her counsel, by filing a Complaint on September 18, 2024. (Docket No. 1).  On March 10, 2025, Plaintiff filed a motion for judgment on the pleadings, supported by a memorandum of law. (Docket Nos. 17, 18).  The Commissioner interposed a brief in opposition to the motion and in support of a request for judgment on the pleadings, on May 6, 2025. (Docket No. 20).  On May 22, 2025, Plaintiff submitted a reply memorandum of law in further support of her motion. (Docket No. 21).

## II.  APPLICABLE LAW

### A.    Standard of Review

"It is not the function of a reviewing court to decide de novo whether a claimant was disabled."  *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999).

The court's review is limited to "determin[ing] whether there is substantial evidence supporting the Commissioner's decision and whether the Commissioner applied the correct legal standard." *Poupore v. Astrue*, 566 F.3d 303, 305 (2d Cir. 2009) (per curiam).

The reviewing court defers to the Commissioner's factual findings, which are considered conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g). "Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lamay v. Commissioner of Soc. Sec*., 562 F.3d 503, 507 (2d Cir. 2009) (internal quotations omitted) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"In determining whether the agency's findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotations omitted).

"When there are gaps in the administrative record or the ALJ has applied an improper legal standard," or when the ALJ's rationale is unclear, remand "for further development of the evidence" or for an explanation of

the ALJ's reasoning is warranted.  *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996).

### B.    Five-Step Sequential Evaluation Process

Under the Social Security Act, a claimant is disabled if he or she lacks the ability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ...."  42 U.S.C. § 423(d)(1)(A).

A claimant's eligibility for disability benefits is evaluated pursuant to a five-step sequential analysis:

1. The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.

2. If not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities.

3. If the claimant has a "severe impairment," the Commissioner must ask whether, based solely on medical evidence, claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without considering vocational factors such as age, education, and work experience.

4. If the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe

impairment, he or she has residual functional capacity to perform his or her past work.

5. If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform.

See Rolon v. Commissioner of Soc. Sec., 994 F. Supp. 2d 496, 503 (S.D.N.Y. 2014); see also 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v).

The claimant bears the burden of proof as to the first four steps; the burden shifts to the Commissioner at step five. See Green-Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003). At step five, the Commissioner determines whether the claimant can perform work that exists in significant numbers in the national economy. See Butts v. Barnhart, 416 F.3d 101, 103 (2d Cir. 2005); 20 C.F.R. § 404.1560(c)(2).

## III. DISCUSSION

Plaintiff raises three main arguments in support of her request for reversal of the ALJ's decision.  First, she challenges the ALJ's conclusion that she could perform her past relevant work notwithstanding limitations arising from carpal tunnel syndrome and fibromyalgia.  Second, Plaintiff argues that the ALJ should have obtained a functional assessment from a treating provider.  Third, she argues that the ALJ erred in considering her subjective complaints.  The Court will address each argument in turn.

A.    *Past Relevant Work*

At step four of the sequential evaluation, a "claimant has the burden to show an inability to return to her previous specific job and an inability to perform her past relevant work generally." *Jasinski v. Barnhart*, 341 F.3d 182, 185 (2d Cir. 2003)(citing SSR 82-62").

A claimant's "residual functional capacity" ("RFC") is his or her "maximum remaining ability to do sustained work activities in an ordinary work setting on a continuing basis."  *Melville*, 198 F.3d at 52 (quoting SSR 96-8p).

When assessing a claimant's RFC, an ALJ must consider medical opinions regarding the claimant's functioning and make a determination based on an assessment of the record as a whole. *See* 20 C.F.R. §§ 404.1527(d)(2), 416.9527(d)(2) ("Although we consider opinions from medical sources on issues such as ...your residual functional capacity...the final responsibility for deciding these issues is reserved to the Commissioner.").

Here, the ALJ determined that, as of the date last insured, Plaintiff retained the RFC to perform her past relevant work as a bookkeeper. (T at 28).  Plaintiff contends that the ALJ erred by failing to account for limitations arising from carpal tunnel syndrome and fibromyalgia.

### 1. Carpal Tunnel Syndrome

The ALJ recognized Plaintiff's carpal tunnel syndrome as a medically determinable impairment, which was significant enough to require surgery, but found it did not cause more than minimal limitation in Plaintiff's functioning and was therefore a non-severe impairment. (T at 20-21).

It is not clear whether Plaintiff challenges the ALJ's conclusion that her carpal tunnel syndrome is a non-severe impairment, but she does argue that the ALJ erred by failing to account for limitations arising from that impairment when formulating the RFC and concluding that she could perform her past relevant work.

The Court concludes that, even assuming Plaintiff's carpal tunnel was non-severe, the ALJ's analysis was inadequate and a remand is required.

An ALJ is required to "account for limitations imposed by both severe and non[-]severe impairments." *Parker-Grose v. Astrue*, 462 F. App'x 16, 18 (2d Cir. 2012) (citing 20 C.F.R. § 404.1545(a)(2) and 20 C.F.R. § 416.945(a)(2)); *see also Frank J. v. Comm'r of Soc. Sec.*, No. 20-CV-687, 2021 WL 4241439, at *3 (W.D.N.Y. Sept. 17, 2021) ("[W]here an impairment is excluded at step two and the ALJ fails to account for functional limitations associated with the impairment in determining the claimant's RFC, remand for further proceedings is appropriate."); *Douglas*

*v. Saul*, No. 20-CV-322, 2021 WL 2852962, at *9 (S.D.N.Y. July 8, 2021)

("SSA regulations specifically state: '[w]e will consider all of your medically

determinable impairments of which we are aware, including your medically

determinable impairments that are not "severe" ... when we assess your

residual functional capacity'").

Here, Plaintiff's diagnosis of carpal tunnel syndrome, with pain,

tingling, and numbness in the hands, was well-documented in the treatment

record (T at 374-77, 378-84, 397-403, 734-40, 765-71).

Plaintiff testified that her past relevant work required extensive typing,

which is now practically impossible for her to perform. (T at 42-43, 44).

She was terminated because she "wasn't keeping up with the work." (T at

42).  She wears braces on both wrists because of pain, particularly when

she handles objects. (T at 45-46).  She cannot do laundry because of her

hands. (T at 46).

The ALJ's discussion of the impact of Plaintiff's carpal tunnel on her

ability to engage in extended, repetitive fine motor activities (e.g., typing) is

conclusory, relying primarily on Plaintiff's testimony that she could use her

mobile phone, make coffee in a percolator, and get dressed. (T at 21, 26-

27).

Notably, however, making coffee and getting dressed are discrete, limited duration events.[3]  Although Plaintiff testified that she receives calls and accesses video conference and social media applications on her mobile phone (T at 47-48, 50), she does not have a computer (T at 48) and uses her phone for 20-25 minutes in the morning. (T at 50).

The ALJ did not explain how the performance of these activities (1) justifies an RFC determination that includes no limitation as to fine motor activities with the hands and/or (2) translates into the ability to engage in extensive typing and operation of a computer over the course of a workday.

These are material omissions. The vocational expert testified that a hypothetical claimant with Plaintiff's RFC, but also limited to occasional fingering, could not perform the past relevant work. (T at 54).

A remand is, therefore, required. *See, e.g., Hamilton v. Colvin*, 8 F. Supp. 3d 232, 242 (N.D.N.Y. 2013) ("Rather, it appears the ALJ dismissed the diagnosis [of carpal tunnel syndrome] after concluding the impairment was non-severe. This is significant because the ALJ found that [the plaintiff] retained the RFC to perform ... jobs [that] require good use of both hands and the fingers."); *Bedasie v. Comm'r of Soc. Sec.*, No. 20-CV-4094 (MKB),

---

[3] Moreover, while Plaintiff testified that she could get dressed (T at 46), she later stated that she cannot put on her brassiere. (T at 48).

2022 WL 4326122, at *11 (E.D.N.Y. Sept. 17, 2022)("Because the ALJ failed to account for any functional limitations associated with Plaintiff's [carpal tunnel syndrome] in determining Plaintiff's RFC, the Court remands the case.").

### 2. Fibromyalgia

The ALJ recognized that Plaintiff's fibromyalgia, characterized by fatigue, pervasive pain, and low energy, was a severe impairment. (T at 25-26).

The ALJ determined that Plaintiff nevertheless retained the ability to meet the physical and mental demands of her past relevant work as a bookkeeper, a skilled occupation that requires sustained attention and concentration and can involve significant stress. (T at 26).

The ALJ did not discuss Plaintiff's fibromyalgia-related pain and fatigue specifically, other than recognizing that there were occasions when she was positive for tender points upon treatment with her rheumatologist, but not with her treating pain specialist. (T at 26).

This is insufficient to sustain the ALJ's decision.

As the Second Circuit has recognized, fibromyalgia is a "disease that eludes [objective] measurement." *Green-Younger v. Barnhart*, 335 F.3d 99, 108 (2d Cir. 2003). Fibromyalgia's "cause or causes are unknown, there is

no cure, and, of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia." C*abibi v. Colvin*, 50 F. Supp. 3d 213, 233 (E.D.N.Y. 2014) (quoting *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996)).

"[I]n stark contrast to the unremitting pain of which [fibromyalgia] patients complain, physical examinations will usually yield normal results— a full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions." *Lisa v. Sec'y of Dep't of Health & Human Servs.*, 940 F.2d 40, 45 (2d Cir. 1991) (quoting *Preston v. Sec'y of Health & Human Servs.*, 854 F.2d 815, 817–18 (6th Cir. 1988)).

Here, the ALJ gave inadequate consideration to the impact of fibromyalgia-related pain and fatigue on Plaintiff's ability to meet the demands of her past relevant work, an error compounded by (1) the lack of a functional assessment from a treating provider (as discussed further below) and (2) the ALJ's decision to discount the opinion of Dr. Joshua Goldstein, a consultative psychiatric examiner, who assessed moderate impairment in Plaintiff's ability to understand, remember, and apply complex directions and instructions and mild limitation in her capacity to sustain concentration and perform at a consistent pace. (T at 576).

Once again, the ALJ's omission was material, as the vocational expert testified that Plaintiff's past relevant work as a bookkeeper is skilled work. (T at 53-54).  *See McBride-Meyers v. Berryhill*, No. 16-CV-5696 (RLE), 2017 WL 4386374, at \*4 n. 9 (S.D.N.Y. Sept. 29, 2017)("DOT Listing 210.382-014 describes Bookkeeper as 'sedentary, skilled work with a specific vocational preparation (SVP) of six.'")

Skilled work requires "qualifications in which a person uses judgment to determine the machine and manual operations to be performed in order to obtain the proper form, quality, or quantity of material to be produced." 20 C.F.R. § 404.1568(c).

Skilled work can "require dealing with people, facts, or figures or abstract ideas at a high level of complexity." *Id*. It may require abstract thinking, practical knowledge of machinery and understanding of charts, or exceptional ability "to deal with people, organize various data, and make difficult decisions in several areas of knowledge." *Id*.

Even assuming that Plaintiff's fibromyalgia-related pain and fatigue are only mild or moderate, the ALJ erred by failing to provide an explanation and adequate assurance that she considered the impact of these symptoms when determining that Plaintiff could perform demanding past relevant work. *See generally Novas v. Kijakazi*, No. 22-CV-1020-MKV-

BCM, 2023 WL 2614362, at *12 (S.D.N.Y. Mar. 8, 2023); *Coulter v. Comm'r of Soc. Sec.*, 673 F. Supp. 3d 365, 380 (S.D.N.Y. 2023) (S.D.N.Y. May 10, 2023).

    B.    *Duty to Develop the Record*

Social Security proceedings are non-adversarial and the ALJ is obliged "to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 111, 147 L. Ed. 2d 80, 120 S. Ct. 2080 (2000) (citation omitted). This obligation applies even if the claimant is represented by counsel. *See, e.g., Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999)(citing *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996)).

The ALJ's duty to develop the record has been described as a "bedrock principle of Social Security law." *Batista v. Barnhart*, 326 F.Supp.2d 345, 353 (E.D.N.Y.2004)(citing *Brown v. Apfel*, 174 F.3d 59 (2d Cir.1999)).

In the present case, the record does not include a functional assessment from any of Plaintiff's treating providers.  The ALJ erred by failing to obtain such an assessment.

It is well-settled that "an ALJ must attempt to obtain medical opinions—not just medical records—from a claimant's treating physicians."

*Skartados v. Comm'r of Soc. Sec.*, No. 20-CV-3909 (PKC), 2022 WL 409701, at *4 (E.D.N.Y. Feb. 10, 2022)(citing *Prieto v. Comm'r of Soc. Sec.*, No. 20-CV-3941 (RWL), 2021 WL 3475625, at *10–11 (S.D.N.Y. Aug. 6, 2021) (collecting cases)).

"Medical opinions from treating physicians are critical because, beyond simply diagnosing the patient's impairment, they relate the impairment to the patient's functional capacity." *Skartados*, 2022 WL 409701, at *4 (citing *Guillen v. Berryhill*, 697 F. App'x 107, 109 (2d Cir. 2017) ("The medical records discuss her illnesses and suggest treatment for them, but offer no insight into how her impairments affect or do not affect her ability to work, or her ability to undertake her activities of everyday life.")).

"It is not sufficient for the ALJ simply to secure raw data from the treating physician. What is valuable about the perspective of the treating physician—what distinguishes him from the examining physician and from the ALJ—is his opportunity to develop an informed *opinion* as to the … status of a patient." *Robins v. Astrue*, No. CV-10-3281 FB, 2011 WL 2446371, at *4 (E.D.N.Y. June 15, 2011)(quoting *Peed v. Sullivan*, 778 F. Supp. 1241, 1246 (E.D.N.Y.1991)(emphasis original).

Notwithstanding the abrogation of the treating physician's rule, the duty to develop the record, which includes re-contacting treating physicians when needed to afford the claimant a full and fair hearing based on an adequately developed record, applies to claims governed by the new Regulations. *See, e.g., Snoke v. Comm'r of Soc. Sec*., No. 22-CV-3708 (AMD), 2024 WL 1072184, at *9 (E.D.N.Y. Mar. 12, 2024); *Fintz v. Kijakazi*, No. 22-CV-00337(KAM), 2023 WL 2974132, at *7 (E.D.N.Y. Apr. 15, 2023).

In this case, the need for a functional assessment from a treating provider was particularly necessary as the ALJ found Plaintiff significantly limited to a reduced range of sedentary work (T at 24) but concluded that she could nevertheless perform her past relevant work. (T at 28).

Under such circumstances, and particularly given Plaintiff's fibromyalgia diagnosis, the insight and perspective of a treating provider was necessary to ensure a full and fair adjudication of the benefits claim. *See Rivera v. Saul*, No. 3:18-CV-1463(WIG), 2019 WL 4294829, at *5 (D. Conn. Sept. 11, 2019)(remanding because "[a]lthough the ALJ credited the diagnosis of fibromyalgia and found that the condition was severe, he failed to obtain any treatment records from Dr. Lippman or an opinion addressing the effect this condition has on Plaintiff's day to day functioning.").

The Court notes, with frustration, that Plaintiff's counsel told the ALJ that the record was complete (T at 56), but now seeks a remand by arguing that the record is incomplete.

However, "remand is required whenever further development of the record is necessary, even where (as here) the underdevelopment of the record is attributable, in part, to inaction by the claimant's counsel." *Martinez v. Saul*, No. 3:19-CV-01017-TOF, 2020 WL 6440950, at *12 (D. Conn. Nov. 3, 2020)(quoting *Vincent v. Astrue*, No. 08-CV-0956 (VEB), 2010 WL 10827101, at *8 (N.D.N.Y. Mar. 30, 2010)).

"Where, as here, it is apparent from the face of the record that the record lacks necessary information, the ALJ cannot be relieved of his affirmative obligation to develop the record by a statement of counsel." *Hilsdorf v. Comm'r of Soc. Sec.,* 724 F. Supp. 2d 330, 346 (E.D.N.Y. 2010).

C.    *Subjective Complaints*

A claimant's subjective complaints of pain and limitation are "an important element in the adjudication of [social security] claims, and must be thoroughly considered in calculating the [RFC] of a claimant." *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010) (citation omitted); *see also* 20 C.F.R. § 416.929.

However, "the ALJ is … not required to accept the claimant's subjective complaints without question." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citations omitted).

Rather, the ALJ "may exercise discretion in weighing the credibility of the claimant's testimony in light of other evidence in the record." *Id.* (citation omitted); *see also Henningsen v. Comm'r of Soc. Sec.*, 111 F. Supp. 3d 250, 267 (E.D.N.Y. 2015) ("The ALJ retains discretion to assess the credibility of a claimant's testimony regarding disabling pain and 'to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant.'" (quoting *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979))).

The ALJ follows a two-step process in evaluating a claimant's subjective complaints.

First, "the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged." *Genier*, 606 F.3d at 49 (citation omitted).

Second, "the ALJ must consider the extent to which the claimant's symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence of record." *Id.* (citation, alterations, and quotation marks omitted). The ALJ must "consider all of the available

medical evidence, including a claimant's statements, treating physician's reports, and other medical professional reports." *Fontanarosa v. Colvin*, No. 13-CV-3285, 2014 U.S. Dist. LEXIS 121156, at *36 (E.D.N.Y. Aug. 28, 2014) (citing *Whipple v. Astrue*, 479 F. App'x 367, 370-71 (2d Cir. 2012)).

If the claimant's allegations of pain and limitation are "not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry." *Meadors*, 370 F. App'x at 184.  This inquiry involves seven (7) factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medications taken to alleviate the pain; (5) any treatment, other than medication, that the claimant has received; (6) any other measures that the claimant employs to relieve the pain; and (7) other factors concerning the claimant's functional limitations and restrictions as a result of the pain. *See* 20 C.F.R. § 404.1529(c)(3)(i)-(vii)).

If the ALJ discounts the claimant's subjective complaints, the ALJ "must explain the decision to reject a claimant's testimony "with sufficient specificity to enable the [reviewing] Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether [the ALJ's] decision

is supported by substantial evidence." *Calzada v. Astrue*, 753 F. Supp. 2d

250, 280 (S.D.N.Y. 2010)(alterations in original, citations omitted).

Here, Plaintiff testified as follows: She is married and lives with her

husband and adult daughter. (T at 43-44).  She lives with pervasive pain,

aggravated by prolonged sitting or standing.  (T at 44).  She cannot type

and has memory problems. (T at 44-45). Medication causes drowsiness. (T

at 45).  She wears bilateral wrist braces for pain. (T at 45).  She cannot lift

more than 3 pounds. (T at 46).  She performs light household chores but

needs help with laundry and shopping. (T at 46-47).  A home health

attendant helps with chores, food preparation, and organizing her

medication. (T at 51-52).  Depression sometimes leads to lack of motivation

and attention to personal hygiene. (T at 49).  Pain and numbness radiate

from her neck, especially on the left side. (T at 50-51).

The ALJ found that Plaintiff's medically determinable impairments

could reasonably be expected to cause the alleged symptoms, but

concluded that Plaintiff's statements as to the intensity, persistence, and

limiting effects of those symptoms were not entirely consistent with the

record. (T at 25).

The ALJ's analysis is undermined by the errors outlined above,

including inadequate consideration of the impact of Plaintiff's carpal tunnel

syndrome and fibromyalgia and the failure to obtain a functional assessment from a treating provider. Plaintiff's subjective complaints will need to be reconsidered on remand after proper consideration of that evidence and adequate development of the record.

In addition, Plaintiff has a strong employment history, including nearly a decade as a bookkeeper (T at 192-96, 215), which reflects favorably on the credibility of her complaints. *See Rivera v. Schweiker*, 717 F.2d 719, 725 (2d Cir. 1983)("A claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability."); *see also Hughes v. Colvin*, No. 15-CV-181S, 2017 WL 1088259, at *6 (W.D.N.Y. Mar. 23, 2017)(noting that "a claimant with an established history of employment is unlikely to be 'feigning disability'")(citation omitted)(collecting cases).

### D.    Remand

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" *Butts v. Barnhart*, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)). Remand for further administrative proceedings is the appropriate remedy "[w]here there are gaps in the administrative record or the ALJ has applied an improper legal

standard." *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999); *see also*

*Rhone v. Colvin*, No. 13-CV-5766 (CM)(RLE), 2014 U.S. Dist. LEXIS

180514, at *28 (S.D.N.Y. Nov. 6, 2014).

The Court finds a remand required for reconsideration of the

evidence and further development of the record for the reasons discussed

above.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Judgment on the

Pleadings (Docket No. 17) is GRANTED and this case is REMANDED for

further administrative proceedings consistent with this Decision and Order.

The Clerk is directed to enter final judgment in favor of the Plaintiff and then

close the file.


Dated: September 2, 2025          *s/Gary R. Jones*

                                 GARY R. JONES
                                 United States Magistrate Judge